UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:21-cr00112-VLB |
| | : | |
| v. | : | |
| | : | |
| SHABAZZ VALENTINE | : | APRIL 5, 2023 |

**SENTENCING MEMORANDUM**

I. **INTRODUCTION**

The great Langston Hughes once said, "Hold fast to your dreams because if dreams die, life is like a broken wing bird, which cannot fly." It so important that we be strong fierce advocates for our clients, and their lives, their ability to thrive and survive. It's amazing how many problems people have, and oftentimes these problems are more difficult than they can handle alone, helping people just impacted me so tremendously, that I decided long ago that I would never give up on people, and that I would help them no matter how difficult the situation. I am committed to fighting for justice even if I find myself in waters way over my head, which is where I find myself in this very serious Federal case, but Shabazz

1

**Valentine needs me, his family has called on me, and I promised myself that I would always be a voice for those with no voice.**

**The truth be told we lawyers find ourselves before courts doing same old thing, writing memos that all look the same and sound the same.  The fact is, the court is aware of the sentencing guidelines, the court understands the guidelines are discretionary, and as the first black female Supreme Court Justice, Ketanji Brown Jackson reminds us, sentencing itself is a discretionary act.  She also reminds us that it is not a numbers game, that persons before the court are human, and in fashioning a sentence the court must always be aware of that. In preparing this memo I have read a tremendous amount of other sentencing memorandums.  Ironically, they all sound alike and look alike.  They all outline the same argument as it relates to sentencing factors, all of which again the court is aware of.**

**If it pleases this Honorable Court, I make no excuses for my client's behavior, I stand before this Court to assist the Court in fashioning a sentence that is sufficient, but not greater than necessary, to accomplish the purposes of sentencing as set forth under 18 U.S.C. § 3553(a) of the Federal Sentencing Guidelines.[1]**

---

[1] 3553(a) states that the court shall, as in must, consider certain factors in determining the specific sentence to impose so that the sentence is enough, but not more than necessary, to meet the objectives of sentencing (according to the statute, these are **deterrence, protection of the public, rehabilitation and** an opportunity for the defendant to obtain educational opportunities while incarcerated.

The Defendant, Shabazz Valentine, is one of five co-defendant subject to an indictment returned to the court on July 6, 2021, charging him with 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 (Conspiracy to Distribute, and to Possess with Intent to Distribute, Fentanyl and Cocaine); 21 U.S.C. §§ 841(a)(1) 841(b)(1)(A) and 846 (Attempt to Distribute, and to Possess with Intent to Distribute, Fentanyl) and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 841(b)(1)(B) (Possession with Intent to Distribute and Distribution of Fentanyl, Cocaine and Cocaine Base).

## II. ACCEPTANACE OF RESPONSIBILITY: OFFENSE and PENALTY

Having accepted full responsibility for the actions that has brought him before the Court for the very first time in his entire life, he pled guilty to the following offense, and is subject to the following penalty under the law.  Mr. Valentine pled guilty to Conspiracy to Distribute, and Possess with Intent to Distribute, 40 Grams or More of Fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B), and is subject to a possible term of imprisonment of 5 to 40 years, 4 years to lifetime of supervised release, a $5,000,000 fine, and a $100 special assessment.   Since the time of his arrest the Defendant has been a pretrial detainee held at the Donald W. Wyatt Detention Facility.

## III. DISCUSSION

    a. **Characteristics of Shabazz Valentine**

**Shabazz Valentine was born on May 3, 1994, in Hartford, Connecticut. He is 28 years old and has never been arrested nor has he been before this court or any other court. His father is Colin Valentine (age 54). His father lives in Vernon, Connecticut and works as an engineer for Pratt & Whitney. His mother's name is Laurna Lucien (age 49) and she lives at 181 Coventry Street, Hartford, Connecticut, and she works as a Certified Nurse Assistant in a nursing home. As the court can see, Shabazz was born when his mother was only 21 years of age. While they did their best to raise him, his parents were kids themselves when they had him. In addition, his parents had two other mouths to feed, in that Shabazz has three other siblings.**

**Mr. Valentine has presented to this court as a respectful and decent young man. As the USPO has reported, his mother separated from his father and at 21 years old had to raise this young child as a single parent.[2]**

---

[2] **Studies focusing on African American boys find that those living without a father in the home are much more likely to get into trouble with the law, get into fights, and have a school- related discipline problem.
Behavioral problems (fatherless children have more difficulties with social adjustment, and are more likely to report problems with friendships, and manifest behavior problems; many develop a swaggering, intimidating persona in an attempt to disguise their underlying fears, resentments, anxieties and unhappiness).**

As one can imagine, it was hard for a 21 year old mother to raise and financially support a growing family. It is apparent from the PSR that this family made no excuses, and they did the best they could to make ends meet.

The very first day I met Mr. Valentine was on a visit to Wyatt Detention Center. As soon as I walked into the lawyer's conference room and started talking to Mr. Valentine, I knew he was different. I knew this because he was just shaking his head and not saying anything. When he started to talk I was shocked. He didn't conform with the norm. Normally, clients would immediately ask when can I motion the court to get them out. They would start making excuses as to why they are in jail, but not Mr. Valentine.

He was relieved, he was grateful for me, he was grateful to be alive, and was happy that it was over. I later learned from reading the discovery material that Mr. Valentine wanted out of this life, that he was working off a debt by selling Fentanyl, which he hated and never sold before. When I got deeper into the discovery, his attitude all started to make sense.

Mr. Valentine explained to me that he left home at an early age

**because he did not want to be a burden on his young struggling mother. He explained that she would try and give him a normal life, that his father was involved also, but he could see straight through to the struggle.**

**The PSR is correct in stating that Mr. Valentine was selling drugs from an early age, (**PSR ¶ 51**) but it doesn't give the Court the complete picture, and the Court could be left to believing that Mr. Valentine was involved for many years with selling cocaine and the deadly Fentanyl, that is not the case.**

**Mr. Valentine admitted to me that he was always selling "weed" or marijuana because he grew up in a Caribbean environment, and that was the norm. His father is Jamaican, and his mother is from St. Lucia. This community was heavily influenced by the likes of Bob Marley, and the Rastafarian culture, that looked to marijuana as a healing of a nation, a way to meditate, and it was commonly used, bought, and sold in Mr. Valentine's community.[3]**

**Mr. Valentine explained to me that he was very good at selling "weed" and that it took a lot of his time. He explained that he respected his customers, that he had to have inventory, and in many ways it was really like running a business. The unfortunate reality is this, many black boys like Mr. Valentine will never be**

---

[3] **Weed is an important part of Jamaican culture**, particularly, for the followers of the Rastafarian Faith who believe that weed is essential for meditation and enlightenment. For example, Ras Tyrone, a second-generation Rasta, ganja helps him to keep his mind at peace. (Jul 10, 2021)

6

able to be a part of what is now a billion-dollar industry, instead they will spend many years in jail, and have criminal records.[4]

      b. <u>Characteristics of the Offense</u>

The characteristics of the offense are detailed in the PSR in Paragraphs 4 through 23.  Having sentenced at least one, possibly two co-defendants in this case to date, the Court is very aware of the offense conduct that brings Mr. Valentine before the Court for sentencing.

Mr. Valentine takes full responsibility for his part in the enterprise and activities of the same, as detailed in the PSR, and as evidenced by his own admission at the time he entered his change of plea.

Mr. Valentine's plea was entered pursuant to a plea agreement submitted to the court.  The plea agreement details the parties' stipulated calculation under the United States Sentencing Guidelines, which essentially comports with the calculation made by the United States Probation Office.  Notwithstanding, for the reasons discussed further below, Mr. Valentine submits that a sentence below the advisory Guideline range is appropriate and will satisfy the policies and purposes of 18 U.S.C. § 3553(a)(2) in this case.  As such, Mr. Valentine asks the Court to consider a period of imprisonment not to exceed sixty months (60) months.

---

[4] **(HARTFORD, CT) – Governor Ned Lamont today announced that the first legal retail sales in Connecticut of adult-use cannabis to all adults aged 21 and over began this morning at several retailers that have been licensed to sell the products.** Jan 10, 2023

## IV. LEGAL STANDARD

A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender of a particular law. United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (en banc). In reaching its sentencing decision, the Court must consider each of the factors set forth in 18 U.S.C. § 3553(a) to make an individualized sentencing determination. See United States v. Booker, 543 U.S. 220, 245-46 (2005); Gall v. United States, 552 U.S. 38, 59 (2007). The Court should begin by calculating the applicable Sentencing Guidelines range. However, "[t]he Guidelines are not mandatory on sentencing courts; they are also not to be presumed reasonable." Nelson v. United States, 555 U.S. 350, 352 (2009).

Rather than relying on the Guidelines, a sentencing court must make an individualized assessment as to the appropriate sentence based on the facts presented, and in light of each of the factors set forth in 18 U.S.C. § 3553(a). The Court may impose a below-Guidelines sentence based entirely on policy considerations, including disagreements with the Guidelines. Kimbrough v. United States, 552 U.S. 85, 101 (2007); United States v. Seval, 293 F. App'x 824, 836-37 (2nd Cir. 2008) (unpublished summary order) ("the Supreme Court has made it clear that sentencing judges may consider the general appropriateness of a Guideline range"). This is particularly true when considering Guidelines that

8

are not based on the Sentencing Commission's traditional empirical and experiential study.  See Kimbrough, 552 U.S. at 109.

Title 18, United States Code § 3553(a) provides the framework within which a sentencing judge must determine the appropriate sentence for a defendant: **Factors to be considered in imposing sentence**.

The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the sentence to be imposed, shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

   A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   B. to afford adequate deterrence to criminal conduct;

9

        C.      **to protect the public from further crimes of the defendant; and**

        D.      **to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;**

(3)    **the kinds of sentence available;**

(4)    **the kinds of sentence and the sentencing range established for—**

        A.      **the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines;**

(5)    **any pertinent policy statement— (Please see: "The Garland Memo")[5]**

        A.      **issued by the Sentencing Commission**

---

[5] Mandatory Minimum Offenses: The proliferation of provisions carrying mandatory minimum sentences has often caused unwarranted disproportionality in sentencing and disproportionately severe sentences. (Garland Memo P3P2).

10

>(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

>(7) the need to provide restitution to any victims of the offense.

>18 U.S.C. § 3553(a).

Guideline § 1B1.1 sets forth a three-step process for the sentencing court to follow in determining a "reasonable" sentence. The first step requires the sentencing court to determine the correct Guideline range for the case. In the second step, the sentencing court must determine whether a departure from the Guideline range is warranted due to the presence of extraordinary circumstances "of a kind" or "to a degree" that were not adequately considered by the Commission.
These two steps will produce a sentence that is "under the framework set out in the Guidelines."

The third step requires the sentencing court to consider the factors under 18 U.S.C. § 3553(a) taken as a whole in determining an appropriate sentence. In this third step, the court must determine whether to impose a "variance" sentence, which is a sentence outside of the Guideline range (many courts have

called this "a non-Guidelines sentence") by considering the factors set forth in Section 3553.

Ultimately and most importantly, the Court should be guided by its statutory mandate to order a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing, while considering as well how best to impose "individualized justice." United States v. Crosby, 397 F.3d 103, 114 (2d Cir. 2005), abrogated on other grounds, United States v. Fagans, 406 F.3d 138, 142 (2d Cir. 2005

In fashioning a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing, while considering how to best impose "individualized justice," we ask this Honorable Court to consider among many other great individual characteristics of Mr. Valentine, that he has no criminal history, he is very young, he has family support, and that he has expressed a desire to change his life. Mr. Valentine knows the importance of correcting the path that lead him to Court, and has also expressed a desire to get all the education he can get. He is working towards completing his degree to allow him to become a social worker. He told me this from the first day I sat down with him. The truth is this, he said he wanted to change his ways, and he wanted to get an education, so I ask myself, I ask this Court, is there evidence that he has demonstrated that he has changed his ways? The answer is yes. He didn't wait until he was released to demonstrate that he is serious about becoming a better

person, he started immediately. He started while in jail where it is not cool to go to school, where it is not cool to work. Mr. Valentine has taken advantage of every job and every course the prison has offered. To keep him in jail for over 5 (five +) years would only serve to deter the progress that he has demonstrated below.

**COURSES COMPLETED WHILE AT WYATT DETENTION AND CERTIFICATES EARNED.**

**Certificate of completion in …**

    **1.) Social Anxiety Coping Skills**

    **2.) Post-Traumatic Stress Disorder Workbook**

    **3.) Self-Esteem Workbook**

    **4.) Assertive Skills**

    **5.) Obession & Compulsions Workbook**

    **6.) Panic Coping Skills Workbook**

    **7.) Grief Workbook**

    **8.) Covid-19 Anxiety Workbook**

    **9.) Thought Process & CBT Workbook**

    **10.)    Post-Traumatic Stress Disorder Workshop**

    **11.)    Universal Life Church – Credentials of Ministry**

    **12.)    Living with Others**

    **13.)    Rational Thinking**

14.)     Criminal Lifestyles

15.)     Adjustment to Incarceration

Mr. Valentine also a serious approach to his academic studies, and joined the Book Club and obtained certificates in the following:  BOOK CLUB …

1.) MUMBO JUMBO

2.) ANGELAS'S ASHES

3.) CURSE OF THE NIGHT WITCH

4.) THE GREAT GATSBY

5.) BLACKTOP WASTELAND

6.) MENTOR: THE KID & THE CEO

7.) THREE CUPS OF TEA

8.) THE GIRL WITH THE DRAGON TATTOO

This is an exhaustive list of certificates that Mr. Valentine has worked hard for and earned while at Wyatt Detention Center. (EXHIBIT A)

**Discipline**

Mr. Valentine has worked hard to stay out of trouble while incarcerated, and we all know that isn't easy.  Yet, keeping his head in the books, staying in class as often as he could, he has managed to demonstrate that changing his life is possible.  He was given one ticket for making tea that helped himself and many others, in response to the Covid-19 outbreak.  He was accused of illegally making

14

the tea as moonshine. He fought the ticket and it was later overturned. (Exhibit B)

**Community Support and Character letters**

He has received great character letters from Sgt. Anastasia McCLeary, who speaks of the person he truly is, and makes it clear that Mr. Valentine has the strength and determination to overcome his current challenges; to Mrs. Chelsea Gore, who speaks of how Mr. Valentine would pick up her daughter after school and look after the child until she got home from work. This is who Shabazz is, and he is apologetic for his actions, and is deserving of a second chance. (Exhibit C)

**Shabazz Valentine – Letter to the Hon. Vanessa L. Bryant**

I have spoken for Mr. Valentine, his community has spoken for him, and his parents have spoken for him. Mr. Valentine wants this court to hear from him directly, and he wants this court to know that he is sorry for his actions, and that he is worthy of change and a second chance. Shabazz and I have spoken for many hours over this journey, and he knows that he can't live his life like a bird with a broken wing, he knows that he must hold stead-fast to his dreams, and if it pleases the Court, he wants the court to read his letter. (Exhbit D)

**Major Kristen Damaso – Wyatt Detention High Honor of Appreciation**

The Wyatt Detention Center has a saying, "Clear your space, Clear your mind." In connection therewith, the Wyatt Detention Facility Programs

15

department recently spearheaded a painting/cleaning detail in all its housing units including painting cells, painting the day room walls and railings, cleaning staircases, freshening up bulletin boards, painting showers, and general cleaning of living spaces to reduce clutter. While many inmates refused to assist, some complaining that the process was an inconvenience, Mr. Valentine stepped up to help. He saw the value in this process, and being determined to change his life, he called on that inner self, that part of him that he learned from going to church with his mother, and he decided to not be a part of the negative crowd, he decided to side with the staff and even though it might be uncool, he worked very hard to make his prison community better.

I am sure this court would agree that he has demonstrated an enormous amount of change since he has been incarcerated. The staff commented that Mr. Valentine's help was needed, and it was needed not just to complete the project, but to change the mindset and tone of the detainee population to one of a teamwork effort. Basically, Mr. Valentine helped others see that it is "cool" to do the right thing.

Major Damaso stated that "it was a pleasure to have Mr. Valentine on the detail team, and that while on the team he was an integral part of the success of the detail." She stated and I quote, "Detainee Valentine has donated his time and effort to improve the space where all of the detainees currently lay their heads.

We thank him for his time, effort, and dedication to their housing unit, and the facility as a whole." (EXHIBIT E)

**FACTORS THAT MAY WARRANT DEPARTURE**

The Court may consider the doctrine of "incremental punishment" which does not require extensive incarceration. Mr. Valentine has never been arrested nor has he ever served a custodial sentence. Under these circumstances, a sentence well below the five-year statutory mandatory minimum is appropriate and sufficient to deter him from engaging in criminal conduct in the future.

In United States v. Mishoe, 241 F.3d 214, 220 (2d Cir. 2001), the Court stated:

> Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences . . . for the prior offenses.

Mishoe principally addressed the career offender guidelines, but its lesson also applies here. The concept of incremental punishment is relevant to the sentencing goal of deterrence. Where someone has never served a sentence of imprisonment, there is no reason to believe that a lengthy sentence will be a more effective deterrent than a shorter sentence. See United States v. Baker, 445 F.3d 987, 992 (7th Cir. 2006) ("[t]he district court's rationale . . . for departing from the advisory guidelines range is adequate and premised properly on the factors specified in § 3553(a)," including "finding that a prison term would mean more to

17

Mr. Baker than to a defendant who previously had been imprisoned"); United States v. Qualls, 373 F.Supp.2d 873, 877 (E.D. Wis. 2005) ("[g]enerally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.")

## V. CONCLUSION

In fashioning its sentence, the Court may wish to consider Shabazz Valentine's lack of prior custodial sentences, lack of any prior arrest, and whether a sentence within the advisory guideline range is greater than necessary to accomplish the purposes of a criminal sentence in light of the parimony clause of 18 U.S.C. § 3553(a).  In considering it's sentencing options, the Court is aware that the minimum term of imprisonment based on the plea agreement and Mr. Valentine's level is 5 years, and maximum term of 40 years. 21 U.S.C. § 841(b)(1)B).  Based upon a total offense level of 33 and a criminal history category of 1, the guideline imprisonment range is 135 to 168 months.

The probation department notes that Mr. Valentine was eligible for a 2pt. reduction which would of brought his level to 31 because he was Safety Valve eligible.  Having never been in jail before, and concerned for his safety, Mr. Valentine chose not to avail himself to that option.  However, Mr. Valentine accepted responsibility and was very frank and forthcoming with the government. I am sure that government would support this contention, and as such the Court

18

can still consider a further two (2) point reduction, which would bring his adjusted level to a 31. In light of the information he was honest with providing, and in line with the Garland memo, I am sure the Government would agree to this additional two (2) point reduction.

Based on all the reasons outlined in this sentencing memo and all of the great words spoken of Mr. Valentine in the PSR, in the letters submitted on his behalf, and most importantly, based on the character he has shown this Court via his work in the prison while awaiting his day of sentencing, Mr. Valentine respectfully ask this Honorable Court to impose a sentence at or below the statutory minimum sentence. Such a sentence for a first-time offender would be sufficient, but not greater than necessary, to accomplish the purposes of sentencing. Mr. Valentine has shown the Court that these charges do not reflect who he really is, and that through his works in the jail, he is worth a second chance to get back to college and to make something special of himself. And this is his prayer. Thank you.

Respectfully Submitted,

THE DEFENDANT,

BY: _____/s/_____

        Darnell D. Crosland
        **CROSLANDLAWGROUP**
        1200 Summer Street
        Suite 202
        Stamford, Connecticut 06905
        Tel(203) 921-1782/Fax(203) 921-1223
        Bar Id No.: ct25629

## **CERTIFICATION**

     This is to certify that on April 5, 2023, a copy of the foregoing was filed with the Court via the CM/ECF system, by which counsel to all parties, including the Government, will be notified of and have the opportunity to review this filing.

        THE DEFENDANT,

BY: \_\_\_\_/s/_____
        Darnell D. Crosland
        **CROSLANDLAWGROUP**
        1200 Summer Street
        Suite 202
        Stamford, Connecticut 06905
        Tel(203) 921-1782/Fax(203) 921-1223
        Bar Id No.: ct25629